IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY INGRAM,                          )
                                       )
              Plaintiff,               )
                                       )
      v.                               )     Civil Action No. 10-1728
                                       )
RICHARD AMRHEIN, CONSOL ENERGY,        )
  and CARY JONES,                      )
                                       )
              Defendants.              )

## MEMORANDUM OPINION

Pending before the Court are motions to dismiss Plaintiff's Amended Complaint filed by Defendants Richard Amrhein and Consol Energy (Doc. No. 48) and by Defendant Cary Jones (Doc. No. 50.)   In both motions, brought pursuant to Fed. R. Civ. P. 12(b)(6), Defendants argue that the claims of Plaintiff Nancy Ingram are barred by the statute of limitations, that she has failed to meeting the minimal pleading standards set forth in Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009), and/or that she has failed to plead with particularity the elements of her fraud claims as required by Fed. R. Civ. P. 9(b).   For the reasons that follow, Defendants' motions are granted.

## I.    INTRODUCTION

### A.    Factual History[1]

Nancy Ingram was one of six beneficiaries of the estate of her mother, Doris A. Rogers, who died on August 11, 2003. Plaintiff's sister, Sharon Caldwell, and her brother, Kenneth Rogers, were named co-executors of Mrs. Rogers' will.  Attorney Cary Jones was hired by the co-executors to assist in probate of the estate in Washington County, Pennsylvania.  The only substantial assets of the estate were two parcels of real property, one consisting of approximately 22 acres of what appears from the record to be farmland located in East Finley Township, Washington County, Pennsylvania. The other property was approximately 77 acres of land, contiguous to the first property, but located in South Franklin Township, Washington County.    Part of the East Finley Township property, consisting of a house and approximately one acre of land, had a mailing address of 2106 Pleasant Grove Road, Claysville, Pennsylvania.   Plaintiff refers to this house and acreage in her pleadings as "2106."   (We will refer to the two parcels of real estate collectively, including the 2106 house and land, as "the Property" and to the house and land at 2106 Pleasant Grove Road as "the 2106 property.")

---

[1]   The facts in this section are taken from the Amended Complaint and the exhibits thereto and construed in favor of Plaintiff.

2

Because there were no other assets which could be used to pay inheritance tax and other costs of estate administration, the executors decided to sell the Property.   Mr. Jones wrote to the heirs on November 10, 2003, advising them that the farm land had been appraised at $210,000.00 and "the house" (apparently referring to 2106 property) at $87,500.   (Doc. No. 47, Amended Complaint, "Am. Compl.," Exh. 5.)

As the estate was going through probate, the heirs began disputing how the assets should be allocated.   Ms. Ingram alleges in her Amended Complaint and the attachments thereto that she and her father had orally agreed sometime in the 1970s that Plaintiff and her former husband could purchase the 2106 property for $30,000. This sale was never consummated and Plaintiff conceded she had never received a deed to the house and land.   However, Ms. Ingram insisted that she be allowed to purchase the house for $30,000 rather than the $87,000 at which it was then appraised and that she also share equally with the five other heirs; in short, she wanted to receive the 2106 property "off the top."

Sometime before June 16, 2004, Consol Coal Company of Pennsylvania ("Consol") was identified as a potential purchaser of the Property.[2]   After some negotiations, Consol agreed to purchase

---

[2]   Plaintiff named Consol Energy, not Consol Coal Company of Pennsylvania, as a defendant in this suit but has not explained why she did so.   Although

the Property for $348,000 and the transfer was made -- over Plaintiff's objections -- on August 2, 2004. Richard Amrhein served as attorney on behalf of Consol in the transaction.

Plaintiff claims that all three Defendants defrauded her by violating an order purportedly issued by the Honorable Thomas Gladden in the Orphans Court Division of the Court of Common Pleas of Washington County. According to Ms. Ingram, on June 16 and June 23, 2004, Judge Gladden held two hearings to address the objections of Plaintiff (and perhaps those of other heirs) to the upcoming sale to Consol. At either the June 16 or the June 23 hearing, "Judge Gladden ruled possible fraud and denied. . . the use of the Pef code[3] to sell [the Property.]" (Am. Compl., "Exhibits Attached," ¶ 1.)[4] Despite having been at the hearings and thus aware of this ruling, Mr. Jones and Mr. Amrhein proceeded with the sale of the Property in violation of the Judge's order.

Plaintiff alleges that "sometime in 2008," after doing a title

---

all the evidence related to the sale clearly shows Consol Coal Company of Pennsylvania as the purchaser, we will refer simply to "Consol" since the distinction is irrelevant in light of the dismissal of this case in its entirety.

[3]    The Court believes, based on the context, that Plaintiff's use of the phrase "Pef code" is a reference to the Probate, Estates and Fiduciary Code of Pennsylvania, 20 Pa Cons. Stat. § 101 et seq.

[4]    Plaintiff has attached to the Amended Complaint a list in which she explains the source or evidentiary purpose of each Exhibit. The Court has construed these statements as if they were allegations even though they are not part of the Amended Complaint per se.

search, she learned that there had actually been three individual sales: the 2106 property, the 22 acres of land in East Finley Township and the 77 acres in South Franklin Township, each for $348,000, a total of $1,044,000. "[B]y not making a full disclosure to the Court at the time of the adjudication [i.e., the June 16 and June 23, 2004 hearings] and subsequently acting to manipulate the chain of title, Defendants herein defrauded Plaintiff." (Am. Compl., ¶ I.)

Briefly stated, Mr. Jones is alleged to have defrauded Plaintiff and the other heirs by selling the 2106 property over her wishes, failing to record two of the three transactions and, apparently, withholding $696,000 from them. As counsel for Consol, Mr. Amrhein defrauded Ms. Ingram by "effectuating the sale of the Property outside of probate," despite knowing that Judge Gladden had "denied the ability of Amrhein being able to sell any real estate to Consol." Moreover, Mr. Amrhein knew of her claim to the 2106 property, but acted with total disregard for that claim and later "covered up" the transfer in the county tax records. (Am. Compl. ¶ L.) Consol acted fraudulently by effectuating "the transfer of the estate outside of probate, without approval of the Court," that is, "over above Judge Gladden's ruling." (Am. Compl., ¶ N.)

B. Procedural History

Acting *pro se*, Plaintiff filed suit on December 23, 2010,

5

alleging fraud against Mr. Amrhein, Consol, and Mr. Jones (Counts I through III respectively), and against her former attorney, David Barton, for failing to file a petition for contempt against the other Defendants when they transferred the Property "in direct defiance of Judge Gladden's ruling." (Count IV, Complaint, ¶ 22.) Consol and Mr. Amrhein, Mr. Barton, and Mr. Jones all moved to dismiss the Complaint. On April 21, 2011, the Court issued a Memorandum Opinion and Order granting Mr. Barton's motion with prejudice, concluding that Plaintiff had failed to state a plausible claim for fraud against him and that amendment would be futile. (Doc. Nos. 38 and 39.) On May 4, 2011, the Court granted the motion to dismiss filed by Consol and Mr. Amrhein (Doc. Nos. 41 and 42), along with Mr. Jones' motion (Doc. Nos. 43 and 44.) The two latter dismissals were without prejudice to Plaintiff's right to file an amended complaint by May 27, 2011.

Plaintiff filed an Amended Complaint[5] with a number of exhibits

---

[5]    Plaintiff's Amended Complaint again named as a Defendant David Barton, the attorney who initially represented her in her dispute with the executors and who, according to the initial Complaint, had aided and abetted the other Defendants in their fraud. The claims against Mr. Barton in the Amended Complaint were in direct contradiction to the Court's previous Order which had dismissed all such claims with prejudice. Ms. Ingram subsequently moved to dismiss him from this action. (See Doc. No. 60, granted at Doc. No. 61.) Therefore, none of the claims against Mr. Barton in the Amended Complaint have been addressed by the Court.

    In addition, Plaintiff again demanded treble damages (based on the sale price of the Property) against each Defendant in the Amended Complaint, despite having been advised that "there simply is no basis for the request" under Pennsylvania law, which limits her damages in a case alleging fraud

in which she reiterated her claims of fraud against Mr. Jones, Mr. Amrhein and Consol for their activities relating to the sale of the Property.   Defendants subsequently moved to dismiss the Amended Complaint in its entirety.   The parties having fully briefed the motions, they are now ripe for decision.

### C.   Jurisdiction and Venue

Ms. Ingram is a resident and citizen of Florida; Mr. Amrhein and Mr. Jones are residents of Pennsylvania, and Consol Energy is a corporation with its principal place of business in Pennsylvania.   This Court therefore has jurisdiction based on complete diversity of the parties and, according to the Complaint, an amount in controversy in excess of the statutory minimum.   *See* 28 U.S.C. § 1332(a)-(c).   Venue is appropriate in this Court under 28 U.S.C. § 1391(a) because all defendants reside in the same state and the same judicial district.

## II.   STANDARD OF REVIEW

In the aftermath of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and the interpretation of those two cases by the Third Circuit Court of Appeals, the pleading standards which allow a complaint to withstand a motion to dismiss pursuant to Rule 12(b)(6) have taken on slightly new parameters.   The standard is now whether

---

to her "actual loss."   (Doc. No. 43 at 6.)

the complaint includes "sufficient factual matter to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); *see also* Twombly, 550 U.S. at 555, holding that a complaint which offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." The Fowler court further directed that in considering a motion to dismiss, the district court should undertake a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief."

Fowler, 578 F.3d at 210-211 (quotations and citations omitted.)

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949; *see also* Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009), and Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). "Determining whether a complaint states a plausible claim for relief will. . .be a context-specific

8

task that requires the reviewing court to draw on its judicial experience and common sense." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 361 (3d Cir. 2010), quoting Iqbal, 129 S. Ct. at 1950. A complaint should not be dismissed even if it seems unlikely that the plaintiff can prove the facts alleged in the complaint or will ultimately prevail on the merits. The Twombly pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (internal quotations omitted.)

Since Plaintiff's claims sound entirely in fraud, the Amended Complaint must be able to withstand the heightened pleading standard imposed by Fed. R. Civ. P. 9(b). This Rule requires a party to "state with particularity the circumstances constituting fraud or mistake," although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. The heightened particularity requirement is imposed "in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum v. Bank of Am., 361 F.3d 217, 223-224 (3d Cir. 2004), quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

In establishing the circumstances of the alleged fraud, the plaintiff must plead "the date, place or time" of the fraud or use an "alternative means of injecting precision and some measure of substantiation into [her] allegations." Seville Indus., id.; Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). As the Court of Appeals for the Seventh Circuit has commented, "particularity" in describing the circumstances "means the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

## III. ANALYSIS

Inasmuch as Ms. Ingram is acting pro se, this Court will liberally interpret her pleadings as required by the United States Supreme Court and the Court of Appeals of this Circuit. See Dasilva v. Sheriff's Dep't, No. 10-1406, 2011 U.S. App. LEXIS 1095, *5 (3d Cir. Jan. 20, 2011), citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding the allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers.")

Plaintiff has now submitted at least four documents[6] which attempt to state her claims against Defendants: Doc. Nos. 1, 45, 46, and 47. All allegations made in Doc. No. 47, the Amended Complaint which Defendants now move to dismiss, appear in earlier

---

[6] A fifth document, referred to in the docket as an amended motion to amend/correct the case was interpreted by the Court as a motion to file an amended complaint. (Doc. No. 32.)

versions of the complaint. More importantly, there are no new allegations in Doc. No. 47 which have not been previously put forward. The Court has also considered Plaintiff's responses to Defendants Motions to Dismiss, i.e., Doc. Nos. 55 (response to the Amrhein/Consol motion) and 58 (response to Jones' motion) and the attachments thereto. We find Ms. Ingram has still failed to state a claim for fraud against any Defendant.

### A.   Requirements for Stating a Claim of Fraud

As this Court has previously noted, Pennsylvania law requires six elements in order to establish fraud: "1) a misrepresentation, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance." Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005), citing Viguers v. Philip Morris USA, Inc., 837 A.2d 534, 540 (Pa. Super. Ct. 2003). At the very least, "[p]laintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Lum, 361 F.3d at 224.

Here, the misrepresentation Plaintiff alleges was not made directly to her, but rather to Judge Gladden at the hearing on June 16 or 23, 2004, about the number of sales which were pending. She was apparently present at one or both of these hearings and could

11

theoretically have relied on it.  Such reliance could be adequately alleged in the Amended Complaint because she states that she did not learn that there had been three sales until sometime in 2008.  Even construing the Amended Complaint in Plaintiff's favor, however, we conclude she has failed to state the author(s), time, or content of this alleged misrepresentation in sufficient detail inasmuch as she alleges only that "The Defendants herein disclosed the single transaction at issue in the adjudication.  By fraudulent misrepresentation, they avoided full disclosure."  (Am. Compl., ¶ I.)  In short, there is insufficient precision and substantiality in this statement to pass the particularity test.

Another option remains open to Ms. Ingram in attempting to establish her fraud claim.  To the extent her claim is based on Defendants failing to reveal the fact that there were three separate sales of the Property, a material non-disclosure can suffice in some instances to establish fraud.  "The tort of intentional non-disclosure has the same elements as the tort of intentional misrepresentation [or fraud] except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation."  Gibbs v. Ernst, 647 A.2d 882, 889 n. 12 (Pa. 1994).  While active concealment can be fraud, mere silence is not, unless there is a duty to speak. Smith v. Renaut, 564 A.2d 188, 192 (Pa. Super. Ct. 1989); see also

A.2d 555, 560 (Pa. 1999) (comparing the elements of intentional

misrepresentation and intentional non-disclosure).

    With these guidelines in mind, we turn to Plaintiff's claims

against each Defendant.

    B.   Claims against Cary Jones

        In the Amended Complaint, Plaintiff alleges, as she did

in her earlier complaints:

> Defendant Jones acted to effectuate transfer of 2106
> outside of probate.  As counsel for the estate, Jones knew
> of the pre-death transfers that had to have been made so
> as to effectuate such transfer.  It was he who drafted the
> certificate of transfer (unrecorded quit claim deed),[7] and
> perfected transfer by securing the signatures of the
> executors of the estate indicating  -  in direct
> contravention to the facts - that "no unrecorded claims"
> existed on the property.
>
> Defendant Jones proceeded with the sale of real estate with
> total disregard for Judge Gladden's ruling.  Proceeding
> with the sale was an act of contempt of Court.
> Subsequently, Jones committed a fraud as against this
> Plaintiff and all beneficiaries by failing to disclose
> that portions of the real estate had been transferred
> outside of probate by pre-death transfer.

(Am. Compl., ¶¶ O and P.)

    The Court interprets the first paragraph as an allegation that

Mr. Jones defrauded Plaintiff and the other beneficiaries by allowing

the 2106 property to be sold as part of the estate even though he

---

[7]    Plaintiff's reference to a "certificate of transfer" or "an unrecorded
quit claim deed" remains obscure to the Court.  The evidence shows that
the two deeds which appear among Plaintiff's exhibits were both recorded.
(Am. Compl., Exhs. 7 and 15.)

knew that the property had been the subject of "a pre-death transfer."
The only relevant "pre-death transfer" of property the Court can
glean from the exhibits to the Amended Complaint is the purported
intent to transfer the house and surrounding one acre of property
under an oral agreement between Ms. Ingram and her father.[8]  Ms.
Ingram acknowledged during the probate process that she never
received a deed to the house and lot, but insisted to the other heirs
and Mr. Jones that she should receive them in addition to her portion
of the estate.  In exchange, she would pay inheritance tax and any
fees associated with subdividing the 2106 property from the rest of
the real estate in East Finley Township; she would also "buy out"
the interest of Ms. Caldwell (the only heir who opposed the plan)
by paying her one-sixth of the appraised value of the house.  Mr.
Jones contacted the other heirs by letter on November 10, 2003,
outlining this distribution, and asking for their consent to her
proposal.  (Am. Compl., Exh. 5.)  It appears the consents were not
forthcoming.

     Plaintiff further contends that despite her claim, the

---

[8]    There is an additional transfer of property in the record, the relevance
of which the Court has been unable to decipher.  Ms. Ingram refers to the
fact that another 10-acre property belonging to her parents was divided
into "plot plans" and that Ms. Caldwell "put it in her name."    (Am. Compl.,
Exhibits Attached, ¶ 15.)   Exhibit 15 is a deed conveying approximately
10.3 acres from Mrs. Rogers to her daughter Sharon Caldwell and Ms.
Caldwell's husband on May 2, 2002.  The property was divided into three
lots and is identified as being part of tax parcel 270-011-00-00-0030-00.
It appears these lots were subsequently transferred to Consol as part of
the sale on August 2, 2004, but how and why are unclear.

executors of the estate signed an Owner's Affidavit stating that they knew of no unrecorded claims against the property. (Am. Compl., Exh. 6.) Mr. Jones and the executors then deleted a provision from a petition requiring approval by the Orphans' Court for the sale to proceed. (Am. Compl., Exh. 10.) The property was sold to Consol on August 2, 2004, and Mr. Jones advised the heirs - including Ms. Ingram -- of these actions by letter on August 30, 2004. (Id., Exh. 8.) Plaintiff also claims Mr. Jones "committed fraud on a Will" by ignoring Judge Gladden's purported order that the Property could not be sold.

In Pennsylvania, an action alleging tortious conduct, including fraud, must be brought within two years of the date on which the conduct occurred. See 42 Pa. C.S.A.§ 5524(7). The limitations period begins to run when the plaintiff "learned or reasonably should have learned through the exercise of due diligence" of the existence of the claim. Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 148 (3d Cir. 1997); Pearce v. Salvation Army, 674 A.2d 1123, 1125 (Pa. Super. Ct. 1996) ("The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until that point when the plaintiff knows or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.") (Internal quotation omitted.) The fact that Ms. Ingram is and was aware of this rule

is clear on the face of her Amended Complaint, since she states that "[i]n August of 2006, to avoid having the Statute of Limitations run out, Ingram filed a Praecipe for Summons." (Am. Compl. Exhibits Attached, ¶ 9; *see also* the last page of Exh. 9, identifying Mr. Jones as a defendant in Ms. Ingram's action filed in the Court of Common Pleas of Washington County.)

We need not consider whether any actions by Mr. Jones satisfied the criteria for stating a cause of action for fraud because we conclude Plaintiff's claims against him are barred by the statute of limitations. To the extent Mr. Jones defrauded Ms. Ingram by effectuating the sale of the 2106 property over her objections, by directing the executors to delete the provision from the petition which required court approval of the sale, or by directing (or allowing) the executors to sign the affidavit stating they were unaware of any unrecorded claims against the property, those events all occurred not later than August 2, 2004, when the transfer was made. Similarly, if, in fact, Mr. Jones did commit "fraud on a Will" by defying Judge Gladden's order, that fraud occurred simultaneously with or prior to the sale. Plaintiff had to have been aware of the sale not later than August 30, 2004, when Mr. Jones wrote to her and the other heirs. (Am. Compl., Exh. 8.)

Although the statute of limitations is considered an affirmative defense (Fed. R. Civ. P. 8(c)), it may be properly raised

16

in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." McCreary v. Redevelopment Auth. of the City of Erie, No. 10-4243, 2011 U.S. App. LEXIS 10009, *6 (3d Cir. May 17, 2011), quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). The letter of August 30, 2004, provided by Plaintiff, shows she was aware of all Mr. Jones's actions on which her claim of fraud is based more than six years before she filed her complaint against him in this Court. Plaintiff's fraud claims against Mr. Jones are therefore time-barred and are dismissed with prejudice.[9]

## C.   Claims against Richard Amrhein

Plaintiff alleges that

> Defendant Amrhein, as counsel for Consol, acted to effectuate transfer of [the] Estate to Consol outside of probate. Amrhein, having been present at argument on a motion before Judge Gladden, heard His Honor deny the ability of Amrhein being able to sell any real estate to Consol[,] ignored Judge Gladden's ruling and proceeded with the sale. He had knowledge of Ingram's claim to 2106. He acted with total disregard to any valid claim to the real estate. Additionally, Amrhein did actively cover up the transfer on the public record.

> As recently as August 2010, Defendant Amrhein refused to speak of the transfer or to allow Ingram or Ingram's agent

---

[9]   Although Ms. Ingram also states that Mr. Jones is "in Contempt of Court for ignoring Judge Gladden's order and withdrawing the Petition" (Am. Compl., Summary, at 8), as this Court has previously noted, only the Orphan's Division of the Court of Common Pleas of Washington County can address this claim. See Memorandum Opinion, Doc. No. 41, at 6, n. 7.

to engage in discovery.  Specifically, Amrhein indicated that Ingram "will have to find out on your own." [10]

(Am. Compl., ¶¶ L and M.)

To the extent the allegations of fraud are based on actions Mr. Amrhein took regarding the sale of the Property despite his knowledge of Ms. Ingram's claim to the 2106 property, such claims are time-barred for the reasons discussed in the previous section.

Plaintiff further alleges that Mr. Amrhein "separated and deeded off the property and never recorded it in the Courthouse." (Am. Compl., Exhibits Attached, ¶ 11.)  Plaintiff's proposed evidence for this claim is that a title search performed in 2008 showed there are two separate deeds for the property, one for 22 acres in South Franklin Township and a second for 77 acres in East Finley Township, each showing the individual parcel was sold to Consol on August 2, 2004 for $348,000.  Moreover "Doris Rogers' Instrument Summary List" shows two deeds for the transfer under a single instrument number.  (Am. Compl., Exh. 11.)  The third portion of the property sold for $348,000 is 2106 property; Plaintiff alleges that a deed for this property was never recorded but the separate sale is evident from the estate's 2004 tax form and a "Settlement Statement."  (Am. Compl., Exhs. 12 and 14.)

---

[10]  Again, the Court is unsure of the relevance of this statement to Ms. Ingram's claims of fraud.  Mr. Amrhein acted as attorney for Consol and owed Plaintiff no legal duty, e.g., to speak to Ms. Ingram or to allow her to "engage in discovery."

Finally, Plaintiff alleges that despite having been at the June 23, 2004 hearing before Judge Gladden at which he denied "the use of the Pef code," Mr. Amrhein facilitated the sale of the property to Consol Coal.  "He is involved in fraud on a Will and is in Contempt of Court."  (Am. Compl., Summary, at 8.)

We separate Plaintiff's claims against Mr. Amrhein into (1) those actions which (1) pertain to his alleged contempt of Judge Gladden's order regarding transfer of the estate and (2) those which pertain to his alleged fraudulent actions by "covering up" the fact that the Property had been divided into three parcels and sold for a total of $1,044,000.  We may deal with the first in short order: as noted in our previous Memorandum Opinion addressing these allegations, this Court has no authority to hold Mr. Amrhein or any other Defendant in contempt of the Court of Common Pleas of Washington County Pennsylvania.  (*See* note 10, *supra.*)

Plaintiff's argument that she and the other heirs were defrauded when Mr. Amrhein facilitated three separate sales of the Property is undercut by her own evidence.  Plaintiff attaches to her Amended Complaint a copy of the Special Warranty Deed between the executors of the estate and Consol Pennsylvania Coal Company which describes by metes and bounds the property being transferred. The acreage described totaled approximately 109.338 acres, of which approximately 12.75 acres were subject to prior conveyances, leaving

a total of approximately 96.628 acres in the sale to Consol.  (Am. Compl., Exh. 7.)   The deed notes that the property conveyed is identified as tax parcel numbers 270-011-00-00-0030-00 and 590-007-00-00-0010-00, and that the "actual consideration for the within conveyance" was $348,000.00.   Attached to the deed is a receipt from the Recorder of Deeds of Washington County, noting a single instrument number, 200425709, the same tax parcel identification numbers as above, and the same consideration.  (Id.) The same parcel numbers and instrument number are shown in the tax records of South Franklin Township and East Finley Township, also included.

In addition, Plaintiff provides a "Settlement Statement" which she alleges shows that the 2106 property was separately sold for $348,000.00.   (Am. Compl., Exh. 14.)   This claim is refuted by the fact that the "property location" shown on the statement at that address has two tax parcel identification numbers, the same as those shown above.   Since a rough survey provided by Plaintiff (Am. Compl., Exh. 11) shows that the property at 2106 Pleasant Grove Road sits entirely in East Finley Township, it is inconceivable that the Settlement Statement could refer only to that single acre of property.   Moreover, the total settlement charges paid from the buyer's funds at settlement, $7,013.00, precisely match the amount shown on the Recorder of Deeds invoice attached to the Special

Warranty Deed for the transfer of the entire 97 acres.[11]

In sum, Plaintiff has not supported her claim that Mr. Amrhein defrauded her by facilitating three separate sales totaling $1,044,000 for the property in her mother's estate. We conclude, based on her allegations and the evidence she has submitted in support thereof, that her fraud claim against Mr. Amrhein is not "plausible on its face." Twombly, 550 U.S. at 570. All claims against him are therefore dismissed.

D.   Claims against Consol Energy

The claims against Consol Energy are solely that acting through its agent, Mr. Amrhein, and in violation of Judge Gladden's ruling, Consol Energy purchased the property, and as recently as August 2010, again through Mr. Amrhein, "denied Plaintiff discovery relevant in the perpetuation of fraud." (Am Compl., ¶ N.) Moreover, "Consol Pennsylvania Coal Co. purchased the estate illegally [because] Consol needed all the heirs' signatures as they purchased the estate with a Quit Claim Deed on it. Consol committed fraud on a Will and was in Contempt of Court." (Id., Summary at 9.)

These claims are even more tenuous than those against Messrs. Amrhein and Jones. Again, they fail the plausibility test and must

---

[11]   The dubiousness of this claim is further reinforced by the fact that the 2106 property was appraised at no more than $97,500. (Am. Compl., Exh. 13.) It is incongruous to believe that a corporation would pay $348,000 for property appraised at that value unless there were other compelling reasons, none of which appear in the record.

be dismissed with prejudice.   Equally important, Plaintiff has failed to recognize that she has erroneously named Consol Energy as a defendant rather than Consol Pennsylvania Coal Company, despite having been advised of this problem in earlier pleadings.   (*See*, e.g., Doc. No. 29 at 9.)

Ms. Ingram has had numerous opportunities to amend her complaint, yet the latest amendment still fails to state with particularity the events and actions on which her fraud claims are based.   The documents she provides to support her claims are equally unavailing.   We conclude that further attempts at amendment would be futile and therefore dismiss all claims with prejudice.   An appropriate Order follows.

September ___/___, 2011

William L. Standish
United States District Judge

22